ECKERSTROM, Chief Judge:
¶1 Appellants Pima County Assessor and Bill Staples, Pima County Assessor (collectively, "the Assessor") assert the trial court erred in awarding attorney fees and costs to the appellees, Paradigm DKD Group, LLC, Eastpoint 22nd Market Place, LLC, and Thomas Francis Naifeh (collectively, "Paradigm") upon finding Paradigm substantially prevailed in its special action seeking public records pursuant to A.R.S. §§ 42-11009(A)(2) and 39-121.02. For the following reasons, we vacate the judgment below and remand for further proceedings consistent with this opinion.
Factual and Procedural Background
¶2 "We view the facts in the light most favorable to upholding the trial court's ruling." Hammoudeh v. Jada , 222 Ariz. 570, ¶ 2, 218 P.3d 1027 (App. 2009). The facts in this matter are largely undisputed. The Assessor annually identifies, lists, and values all taxable property within Pima County. The Assessor then notifies parties related to each Pima County parcel of its valuation, typically no later than March 1 of each year. Taxpayer challenges are due sixty days after the Assessor issues notices of valuation. To facilitate such challenges, A.R.S. § 42-11009(A)(1) obligates the Assessor to provide taxpayers with rapid access to information relating to notices of valuation and assessment "in the media and format in which they are maintained."
¶3 In February 2014, Paradigm requested under § 42-11009 public records used to value property for purposes of ad valorem taxation, including "current values for 2014, intranet notice valuations, including notes, assessor cost models (intranet and internet versions) for tax year 2015, and valuation data and notes for 2015," as well as information regarding software necessary to read and review the data. The Assessor responded by directing Paradigm to the Assessor's public website.[1] Paradigm then filed *1213 a special action to compel the Assessor to disclose the data.[2]
¶4 After a hearing, the trial court ordered the Assessor to "produce all information he maintains concerning the valuation of property, including all information on the Assessor's intranet site that is accessible by his staff ... in the media and format in which they are maintained and in a way that is readable and usable by [Paradigm]," including any necessary source codes ("April 2014 Order"). This ruling "significantly expanded"[3] the scope of Paradigm's original records request. The court denied without prejudice Paradigm's request for fees, reasoning that "it [was] premature to determine who the prevailing party [was]" at that point.
¶5 The Assessor moved to amend the trial court's April 2014 Order, arguing the ruling required it to disclose more data than was statutorily required by § 42-11009.[4] In the alternative, the Assessor requested either a new trial or that the court make findings of fact and conclusions of law pursuant to Rule 52(a), Ariz. R. Civ. P. The court subsequently held an evidentiary hearing to determine "whether the Assessor had produced the records responsive to [Paradigm's] public records request."[5]
¶6 In October 2014, the trial court ruled the Assessor's search for records in response to Paradigm's request was reasonable, Paradigm had not shown the Assessor withheld records responsive to the request, and the Assessor had "promptly provided the records [Paradigm] sought, given the volume of the records sought." The court found "the Assessor has attempted to search for, copy, and produce the records sought by [Paradigm] in good faith and within a reasonable period of time, given the volume of the records sought." The court also held Paradigm was not entitled to attorney fees.
¶7 Paradigm filed a motion for reconsideration of the trial court's October 2014 ruling, arguing it was entitled to fees and costs because the lawsuit was necessary to compel disclosure and because some data remained undisclosed or had been disclosed in unacceptable file formats. The court ordered the parties to meet and confer in an attempt to resolve the outstanding factual issues. On May 18, 2015, the parties filed a joint report, which outlined their continued disagreements regarding which files, if any, the Assessor was still obligated to disclose in order to comply with the court's April 2014 Order. After a status conference, the court appointed a special master to make factual findings as to the parties' continued disputes over what data had been disclosed.
¶8 The special master filed his Report in October 2016, and, in March 2017, the trial court adopted the Report's factual findings in full. The following findings are relevant to this appeal: On March 21, 2014, the Assessor provided Paradigm with a hard drive containing the source code for the Cost Construction System (CCS), used by the Assessor to value property, as well as the CCS databases in .bak format, notice of value data, and the *1214 Assessment Data Set. However, because of an error by the Assessor's information technology department, the CCS program was inoperable until June 23, 2014.[6] On June 3, 2014, the Assessor disclosed redacted photographs and parcel notes; it disclosed a privilege log of the redactions on June 10, 2014. By late March 2015, the Assessor had added new information to its public website, including approximately 525 new data fields relating to property valuation. The special master concluded that by March 20, 2015, all the data the trial court ordered the Assessor to disclose in its April 2014 Order was available on the Assessor's public website, with the exception of the programming used to generate its Mass Appraisal Systems ("MAS source code").[7] The special master's Report also reflects that throughout much of the litigation, the Assessor was updating its "robust public website" to improve public access to records related to parcel valuation data, as well as developing a public terminal at the Assessor's office. Finally, the Report stated that the Assessor "expended substantial time and resources complying with the Court's order, considering the voluminous records required to be disclosed," that his production was timely "given the technical challenges involved," and that "the substantive production of valuation and assessment data fields has been in good faith."
¶9 In its ruling adopting the special master's Report, the trial court expressly agreed with the Report's observation that:
To date, after years of litigation, there has been and there is likely no feasible method for the Court or the Special Master to determine whether the Assessor has produced and listed all data and information maintained by the Assessor "related to the valuation" to the level of certainty that Paradigm demands.
Over Paradigm's objection, the court adopted the special master's findings in full, including that "the Assessor ... produced all of the records." The court further ruled the special master's factual findings were "more detailed and expansive" than its own October 2014 ruling denying fees and costs, and therefore it ruled Paradigm was entitled to again move for fees and costs.
¶10 In July 2017, the trial court granted Paradigm's motion for fees, awarding Paradigm $148,557 in attorney fees and $3,580.26 in costs.[8] The court relied on the factual findings in the special master's Report "along with its own review of the record" to determine Paradigm had "substantially prevailed" up to May 2015.[9] We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(1).
Discussion
Attorney Fees under A.R.S. § 39-121.02
¶11 The Assessor contends the trial court misinterpreted A.R.S. § 39-121.02(B) and abused its discretion in awarding Paradigm attorney fees and costs. We review questions of statutory interpretation de novo; we review a trial court's award or denial of attorney fees for abuse of discretion. Democratic Party of Pima Cty. v. Ford , 228 Ariz. 545, ¶ 6, 269 P.3d 721 (App. 2012).
¶12 Section 39-121.02(A) provides: "Any person who has requested to examine or copy public records pursuant to this article, and who has been denied access to or the right to copy such records, may appeal the denial through a special action in the superior court." Under § 39-121.02(B), "[t]he court may award attorney fees and other legal costs that are reasonably incurred in any action under this article if the person seeking *1215 public records has substantially prevailed." "Both the determination that the petitioner substantially prevailed and the award of fees after making such a finding are at the discretion of the trial court." Hodai v. City of Tucson , 239 Ariz. 34, ¶ 41, 365 P.3d 959 (App. 2016). To date, no Arizona case has addressed what it means to "substantially prevail" under § 39-121.02.
¶13 In construing a statute, our "primary goal ... is to give effect to the intent of the legislature." Cornman Tweedy 560, LLC v. City of Casa Grande , 213 Ariz. 1, ¶ 8, 137 P.3d 309 (App. 2006). "If the statute is clear and unambiguous, we apply [its] plain meaning." Hourani v. Benson Hosp ., 211 Ariz. 427, ¶ 7, 122 P.3d 6 (App. 2005). "We resort to additional considerations 'such as the statute's context, history ... and purpose' " if the language is ambiguous. Taylor v. Cruikshank , 214 Ariz. 40, ¶ 10, 148 P.3d 84 (App. 2006) (quoting State v. Fell , 203 Ariz. 186, ¶ 6, 52 P.3d 218 (App. 2002) ).
¶14 The Assessor argues the plain language of § 39-121.02 unambiguously provides for fees connected only to "denial of access to records already requested." According to the Assessor, this required the trial court to consider whether the litigation was unnecessarily extended to include the production of records outside the scope of Paradigm's original public records request. Specifically, the Assessor argues the statute provides a party may "substantially prevail" only to the extent litigation compels production of "such records" within the scope of an initial public records request. The Assessor maintains the court erred in awarding fees and costs for litigation to secure information beyond the scope of Paradigm's original request, which the Assessor fully cooperated in providing.
¶15 Paradigm disagrees, contending that "[d]etermining which party has 'prevailed' or 'substantially prevailed' is simply a matter of semantics," that is, whether "one party obtained more relief than the other, and to what degree." Paradigm further argues the Assessor "obtained no relief-he asked for none and none was awarded"; thus Paradigm "was completely, not just substantially, successful in its action."[10] In essence, Paradigm argues that once a petitioner has secured some information it would not have received "but for" the lawsuit, it has substantially prevailed and is entitled to all attorney fees incurred in the subsequent litigation regardless of whether the government cooperated in providing further information thereafter.
¶16 After noting that no Arizona case or statute defines what it means to "substantially prevail," the trial court looked to federal case law interpreting the Freedom of Information Act, 5 U.S.C. § 552. The court applied the D.C. Circuit's test, which requires a party seeking fees to show the action was necessary to obtain the information and a causal nexus exists between the action and the agency's surrender of information, which includes considering whether the agency "made a good faith effort to search out material and to pass on whether it should be disclosed." Cox v. U.S. Dep't of Justice , 601 F.2d 1, 6 (D.C. Cir. 1979), overruled on other grounds by Crooker v. Bureau of Alcohol, Tobacco & Firearms , 670 F.2d 1051 (D.C. Cir. 1981).
¶17 Applying this "causal nexus" standard, the trial court reasoned Paradigm was entitled to fees because "the Assessor had decided to post additional records to his website that were not previously publicly available." "[A]s to the events that occurred after the parties met and conferred in May 2015," the court held Paradigm "continued to prosecute the case but was not successful in uncovering any additional information revealing that the Assessor was maintaining records that he did not make publicly available." The court further reasoned "the litigation also shed light on whether [parcel valuation] records are publicly available," which "was a worthwhile goal" advancing "the purpose of A.R.S. § 42-11009(a)." Because the court found Paradigm's special action furthered the statutory *1216 purpose, it awarded Paradigm fees through May 2015.
¶18 We agree with the Assessor that the trial court, in its otherwise thorough and well-reasoned order, overlooked two necessary factors in considering whether Paradigm substantially prevailed in each phase of the litigation. Specifically, the court failed, first, to identify the extent to which the record reflects production beyond the scope of Paradigm's original request. Second, it failed to articulate the point at which the Assessor ceased to function in an adversarial role in this action. Both factors are necessary to a comprehensive evaluation of whether, and to what extent, a party has substantially prevailed in an action brought under § 39-121.02.
Scope of Records Request
¶19 The trial court failed to consider the scope of the original records request when it determined that Paradigm had substantially prevailed through May 2015. By the plain text of § 39-121.02(A), a party may bring a special action for public records disclosure only after making a direct request of the public agency to examine or copy public records and the request has been denied. Litigation that expands the scope of an original request effectively bypasses the process contemplated by § 39-121.02 because it allows a party to seek additional records without first making a request to the agency as provided by the statute. To the extent a party incurs attorney fees in litigating the production of records outside its original request, it cannot be said to substantially prevail because it has not followed the statutory procedure necessary to obtain public records and trigger its ultimate entitlement to fees in litigation.[11]
¶20 Thus, Paradigm asks us to find not only that it could allowably bypass the statutorily mandated request process based on an expanded records request during the course of litigation, but that it should be awarded attorney fees for doing so. Such a holding would frustrate the purpose of § 39-121.02, which expressly contemplates that parties attempt to gain access to public records extra-judicially before bringing such a request to court.
¶21 Here, the record suggests that the trial court ordered records production outside the scope of the Assessor's original request, and that the Assessor not only fulfilled the original records request, but also produced the additional records ordered by the court. Notably, the court adopted the special master's conclusion that by March or June 2014, the Assessor had produced a substantial portion, if not all, of the valuation data contained in Paradigm's original records request and that the court's April 2014 Order "significantly expanded the scope of public records subject to production." Thus, the record suggests that at some point fairly early in the litigation process, any continuing dispute centered on records beyond the scope of the original request. For example, the special master found the Assessor was not in full compliance with the April 2014 Order because it had not produced the MAS code, which was not specifically named in the original records request, although it was within the scope of the court's April 2014 Order. On remand, when determining whether and to what extent Paradigm substantially prevailed, the trial court should consider at what point in the litigation the Assessor had complied with Paradigm's original records request.[12]
*1217 Adversarial Nature of Proceedings
¶22 In evaluating the propriety and amount of attorney fees in public records litigation, trial courts should also consider whether an agency has acted or continued to act in an adversarial role. Semantically, one does not "prevail" over an agency cooperating with, or acting to facilitate, one's goals; instead, one prevails over an adversary. See The American Heritage Dictionary 1397 (5th coll. ed. 2011) (prevail means "to be greater in strength or influence; triumph"). As discussed, the trial court sought guidance from the D.C. Circuit's test for evaluating attorney fees under a "substantially prevailing" standard. That test recognizes the level of governmental cooperation as a necessary factor to consider. See Cox, 601 F.2d at 6.
¶23 Our own jurisprudence addressing the propriety of fees under § 39-121.02 supports this understanding of what it means to substantially prevail. For example, in Arpaio v. Citizen Publ'g Co. , this court held a public officer who was not the custodian of public records may nevertheless be considered an adverse party and held responsible for attorney fees under § 39-121.02 if he worked to prevent disclosure of the records. 221 Ariz. 130, ¶¶ 9-12, 211 P.3d 8 (App. 2008) ("[A]llowing the trial court to shift legal fees incurred during a dispute over access to those records to a third party when the third party engendered the dispute over access and is a party to the action."). Similarly, in Ford , we held that, where " 'collateral issues' actually were ... the crux of the case" disputed by the parties, the trial court appropriately considered the government agency's level of cooperation regarding those collateral matters when denying attorney fees. 228 Ariz. 545, ¶ 14, 269 P.3d 721.
¶24 Furthermore, limiting attorney fees and costs to those expenses incurred during the adversarial stage of a public records special action advances the legislative intent of § 39-121.02(B). As the trial court noted, in 2006 the legislature amended § 39-121.02 to include the "substantially prevailed" language. 2006 Ariz. Sess. Laws, ch. 249, § 1. This amendment "allow[ed] courts to more liberally award damages against state agencies if the plaintiff substantially prevail[ed]." S. Fact Sheet for S.B. 1225, 47th Leg., 2d Reg. Sess. (Ariz. May 9, 2006). Limiting attorney fees and costs to the period during which a governmental agency acts as an adversary incentivizes the agency to act in good faith and collaborate rather than resist disclosure. Conversely, to allow a private litigant to collect fees in perpetuity, so long as it continually expresses dissatisfaction with the records the agency has disclosed, would risk entrenching a private litigant as a paid watchdog at the government's expense-surely a result the legislature did not intend. Further, were courts to measure a plaintiff's success by the amount of information it secured above and beyond its original records request, we would penalize agencies that act cooperatively, comprehensively, and in good faith and would discourage agencies from improving their systems for making data publicly available, all of which counters the purposes of the public records statute.[13]
¶25 Here, the record demonstrates that the trial court overlooked its own repeated findings suggesting that during substantial parts of the proceedings, the Assessor acted not as an adversary but rather had cooperated in good faith to provide Paradigm the information it sought. Indeed, the court repeatedly found the Assessor acted reasonably, disclosed records in a timely fashion, and functioned more as a collaborator than an adversary in developing methods to make public records available not just to the individual plaintiff, but to the broader public.
¶26 To be sure, the record also suggests the underlying action was necessary for Paradigm to obtain the information it requested in its letter of February 2014. In this sense, *1218 the Assessor played an adversarial role at the start of the litigation. However, the record also reflects that the Assessor ceased, at some point, to operate in a fashion reasonably characterized as adverse to Paradigm. For example, the trial court ruled in October 2014 that the Assessor "promptly provided the records [Paradigm] sought, given the volume of the records sought" and that the Assessor "attempted to search for, copy, and produce the records sought by [Paradigm] in good faith and within a reasonable period of time, given the volume of the records sought." Similarly, the trial court adopted the special master's findings that as early as March 2014 the Assessor had produced the hard drive with the CCS source code, CCS databases, and notice of value data; by June 2014 the Assessor made its CCS program operational for Paradigm; over the course of the litigation the Assessor provided valuation data outside the scope of Paradigm's original request; and concurrently with its disclosures directly to Paradigm, the Assessor updated its public website to satisfy its statutory disclosure requirements. Given these findings, the record suggests that, at some stage of the proceedings, Paradigm was no longer "prevailing" over an adversarial governmental agency, but rather had secured the cooperation of the Assessor's office to assist it. At that stage, it would no longer be semantically accurate to claim that Paradigm was substantially prevailing over an adversary in litigation. Nor would it conform to the public policy goals of § 39-121.02(B) to so conclude.
¶27 In summary, we hold a party may "substantially prevail" under A.R.S. § 39-121.02 for the purposes of attorney fees and costs only to the extent an action is necessary to accomplish the purpose of an original records request. Although it may occasionally be appropriate for a court to incorporate a new records request into an ongoing action, the determination of fees and costs should account for the extent to which a litigation expanded the scope of an original request. Second, a party substantially prevails only so long as the entity tasked with disclosure opposes such disclosure or otherwise acts adversarially toward the party seeking records. Whether and when a party ceases to so act is within the purview of the trial court, which may consider, among other things, whether a nexus exists between the action and the surrender of relevant information, whether the entity acts in good faith or continually resists disclosure, and whether the entity acts reasonably and diligently to satisfy its disclosure obligations, given the request. Certainly, once an entity's disclosures fully satisfy the underlying records request, the entity ceases to act in an adversarial capacity, even if continued litigation results in additional records production. However, as the facts of this case demonstrate, the adversarial relationship may cease well before the close of litigation.
Disposition
¶28 Because the trial court failed to account for the above two factors in considering Paradigm's entitlement to attorney fees in its otherwise comprehensive and scholarly order, we grant the Assessor relief and vacate that order. But we remand the matter to the trial court to determine whether, and at what point, the Assessor produced records outside the scope of Paradigm's original request. Additionally, the court should ascertain at what stage in the proceedings the Assessor ceased to act as an adversary in complying with Paradigm's demands for more information and reevaluate Paradigm's request for attorney fees accordingly.[14]
Attorney Fees on Appeal
¶29 Because Paradigm is not the prevailing party on appeal, its request for attorney fees pursuant to A.R.S. § 39-121.02(B) is denied.

The parties agree the Assessor's February 2014 response was factually inaccurate and valuation documents qualifying as public records were not, in fact, available on the Assessor's website as of February 2014. However, a special master appointed by the trial court in 2015 later found that "the Assessor made a good faith effort to provide the public records with his website's capability."

Paradigm's complaint enumerated the following as unavailable on the Assessor's public website: legal class breakdowns; cost model matters, including "[l]isting of a grade," "[r]anking for each component," "[c]omputation components by name and letter code-line item," "[o]verride demarcations," "[u]se percentage," identification of which agent entered or reviewed information for a given parcel, appraiser number, and ratios; (then-)current 2014 valuations for land, building/improvements, "FCV," "LPV," and assessment ratios; and "[a]djustments to various valuation approaches pursuant to notes, calculations or otherwise."

As discussed below, the trial court adopted in full the factual findings of a special master's Report, which concluded that the court's April 2014 Order had "significantly expanded the scope of public records subject to production."

The Assessor also offered its "notice of compliance" with Paradigm's original February 2014 records request.

In a memorandum filed after the evidentiary hearing, Paradigm asserted the Assessor had not produced a variety of data, including land journals, land valuations, mass market appraisals, nine individual senior appraiser databases, the exceptions list, logs of changes to the Assessor's source code application, records deleted from tables furnished with the source code application, images of property cards and other records used by the Assessor, unofficial County Recorder records maintained on the Assessor's servers, an index of photos, and complete genealogies.

This disclosure included 6,775,103 records.

The special master's Report asserts that "this failure to produce is mitigated by disclosure of the residential models, which allows a programmer to incorporate them into an SQL database." The Assessor produced the MAS source code by March 10, 2017, by which time the trial court found "the Assessor has produced the public records Paradigm sought in its public records requests."

Although the trial court never explicitly granted Paradigm's motion for reconsideration, its award of attorney fees implicitly granted reconsideration of its October 2014 order denying fees.

The trial court held, variously, that Paradigm substantially prevailed "up to May 2015"; that it would award fees "through May, 2015"; and that Paradigm substantially prevailed "through May 2015."

Because the trial court expressly addressed the Assessor's contention that Paradigm did not substantially prevail under § 39-121.02, we disagree with Paradigm that the Assessor waived this issue by failing to raise it below. See Trantor v. Fredrikson , 179 Ariz. 299, 300, 878 P.2d 657, 658 (1994) (purpose of requiring party to make specific objection in trial court is to give court an opportunity to rule before appellant claims error on appeal).

This is not to say it would never be appropriate for a court to incorporate a new records request into an ongoing special action, rather than to require a new request outside of that litigation. A trial court could reasonably conclude that a new records request would be futile when the agency receiving the request has been repeatedly oppositional, has refused to timely produce records, or has stated that it will refuse to comply with future requests. The record does not suggest any such concern here.

Here, the trial court focused on identifying the point at which Paradigm ceased to be "successful in uncovering any additional information revealing that the Assessor was maintaining records that he did not make publicly available." To the extent the court found that attorney fees should not be assessed after the petitioner no longer secures or uncovers additional information, this was an unobjectionable criterion for limiting fees. However, to the extent that ruling suggests that the Assessor had any statutory duty to make information publicly available on a website, that would not be a correct consideration under § 39-121.02. That statute enforces public accessibility to governmental information upon an individual's request to "examine or copy" certain records; it does not require that information be readily accessible in any particular format or through any particular portal. § 39-121.02(A).

We do not suggest, however, that a public entity could wholly avoid the effect of § 39-121.02 by refusing extra-judicial records requests yet promptly complying with those requests only when a party opts to litigate the issue. Such conduct would be patently adversarial.

We recognize the possibility that Paradigm could persuade the trial court the Assessor acted as an adversary up to the point when the Assessor ceased to produce any new information. The court may weigh the dates of disclosure, as well as the extent to which disclosures went above the original scope of the records request, in its analysis.