IN THE

# ARIZONA COURT OF APPEALS
DIVISION TWO

_____

JARRON SMITH,
*Plaintiff/Appellee,*

*v.*

TOWN OF MARANA,
*Defendant/Appellant.*

No. 2 CA-CV 2022-0008
Filed October 28, 2022

_____

Appeal from the Superior Court in Pima County
No. C20212398
The Honorable Richard E. Gordon, Judge

**AFFIRMED**

_____

COUNSEL

Frazer Ryan Goldberg & Arnold LLP, Phoenix
By James M. Cool and Joshua N. Mozell

and

American Civil Liberties Union of Arizona, Phoenix
By Benjamin L. Rundall
*Counsel for Plaintiff/Appellee*

Jane Fairall, Marana Town Attorney
By Elizabeth S. Shelton, Deputy Town Attorney, Marana
*Counsel for Defendant/Appellant*

**OPINION**

Presiding Judge Eckerstrom authored the opinion of the Court, in which Chief Judge Vásquez and Judge Cattani concurred.

E C K E R S T R O M, Presiding Judge:

¶1　　　　In this public records action, the Town of Marana ("the Town") appeals from the trial court's ruling ordering it to release unredacted police records to Jarron Smith, pursuant to A.R.S. § 39-121.01. It further challenges the court's award of attorney fees to Smith.　For the reasons that follow, we affirm.

**Factual and Procedural Background**

¶2　　　　In April 2021, Smith was shot during an altercation with another individual.　The altercation took place in a public parking lot and in front of multiple witnesses.　The Town's law enforcement officers investigated and submitted the case for review by the Pima County Attorney's Office, which decided not to file charges against either participant in the altercation.　The County Attorney reasoned that the shooter's actions appeared to be justified under Arizona law as an act of self-defense or defense-of-others, based on statements of neutral witnesses, interviews with both parties, and a review of video and physical evidence.

¶3　　　　Later in April 2021, Smith submitted a public records request to the Town, pursuant to § 39-121.01.　One week later, the Town provided a police report, redacted to exclude, as pertinent here, the names and images of both individuals involved in the altercation.[1]　The following day, Smith filed a second public records request with the Town.　There, he requested "[a]ll policies and procedures" regarding the Town's "processing of public records requests," including how the Town "identifies potentially confidential or private information," the standards the Town "employs to determine" what information to withhold, and how the Town "determines what redactions to make."　The same day, Smith sent a letter to the Town

---

[1]The report also redacted the name of the shooter's girlfriend, who was a percipient witness to the incident, and of Smith's mother, who was not a witness.

demanding the prompt release of the unredacted police report and noting that Smith had authorized his attorney "to file suit and pursue attorney fees for all work performed in pursuit of this public records request." Three days later, also by letter, the Town provided Smith with its legal reasoning for making the redactions. It also sent Smith a copy of a prior memo written by the Town's counsel, which outlined the Town policy for making redactions in response to a public records request.

¶4　　　　In May 2021, Smith filed a statutory special action complaint seeking to compel the Town to comply with Arizona's public records statutes. The complaint alleged that the Town was refusing to disclose the names and images of the individuals involved in the shooting even though the County Attorney had already declined to prosecute either individual. It further alleged the Town was withholding the redacted information "to protect a person who might either be a former law enforcement officer or town official" and that it was seeking "to avoid criticism about its investigation into the shooting." Smith requested relief in the form of orders compelling the Town to disclose certain information he believed to be absent from the already-disclosed records, removal of redactions from the videos and photographs disclosed by the Town, and "damages and attorney fees."

¶5　　　　That same day, Smith also filed an application for an order for the Town to show cause "why the public records . . . should not be turned over" and attorney fees awarded. Smith argued the Town's redactions had hindered his ability to "adequately complete an investigation into the shooting which may have violated his civil and constitutional rights."

¶6　　　　After a hearing on the order to show cause, the trial court ruled in Smith's favor. Reasoning that the records were public records and the Town had not shown why disclosure of the names, videos, and photographs of the shooter and his girlfriend "would be harmful to any significant privacy interest," the court concluded the balance of interests under *Carlson v. Pima County*, 141 Ariz. 487 (1984), "decidedly tip[ped] in favor of inspection" without redaction.

¶7　　　　Smith then requested an award of $20,000 in attorney fees, as well as $365.53 in costs. The trial court awarded Smith partial attorney fees ($14,000) and his costs, as provided by A.R.S. §§ 39-121.02(B) and 12-341, respectively. The court found that a fee award was appropriate even though the Town withheld only "a limited redaction" and that it "disclosed the majority of the records requested," that it timely provided a redaction

log, and that it acted in good faith despite the court's ultimate disagreement over whether case law required it to disclose the names in question.

**¶8**        This appeal followed.   We have jurisdiction pursuant to A.R.S. §§ 12-2101(A)(1), 12-120.01(A)(1).

## Public Records Request

**¶9**        The Town argues the trial court erred (1) by determining that A.R.S. § 13-4401 did not apply to defeat the presumption favoring disclosure of public records and (2) in its application of the *Carlson* balancing test regarding public records disclosures.  Both arguments fail.

**¶10**        We review the trial court's findings of fact for an abuse of discretion and will affirm unless the findings are clearly erroneous.  *See Scottsdale Unified Sch. Dist. No. 48 v. KPNX Broad. Co.*, 191 Ariz. 297, ¶ 20 (1998).  We review de novo the court's legal conclusions drawn from those facts.  *See id.*  Thus, the trial court's determination of "whether plaintiffs wrongfully denied defendants access to [unredacted] public records 'is an issue of law which we review de novo.'"  *Id.* (quoting *Cox Ariz. Publ'ns, Inc. v. Collins*, 175 Ariz. 11, 14 (1993)).

**¶11**        The parties do not appear to dispute that the police reports, videos, and photographs at issue constitute public records and are thus subject to the public records laws.  *See* A.R.S. §§ 39-121 to 39-128; *KPNX-TV v. Superior Court*, 183 Ariz. 589, 592 (App. 1995).  As such, the records Smith requested are "presumed open to the public for inspection."  *KPNX-TV*, 183 Ariz. at 592; *Carlson*, 141 Ariz. at 491.  This approach serves "to open *government* activity to public scrutiny."  *Lake v. City of Phoenix*, 222 Ariz. 547, ¶ 7 (2009).  When a situation involves "potential or apparent unlawful conduct," the government's response to that situation "merits public scrutiny."  *Schoeneweis v. Hamner*, 223 Ariz. 169, ¶ 21 (App. 2009).

**¶12**        However, full disclosure is not absolute.  *See Carlson*, 141 Ariz. at 491.  A number of statutory exceptions curtail the public right of inspection.  *Scottsdale Unified*, 191 Ariz. 297, ¶ 9.  In addition, to prevent potential "substantial and irreparable private or public harm," the custodian of records may lawfully refuse or redact records "where the countervailing interests of confidentiality, privacy or the best interests of the state" outweigh full disclosure.  *Carlson*, 141 Ariz. at 491.  "To justify withholding public documents, the . . . interest in non-disclosure must 'outweigh the general policy of open access.'"  *Phx. Newspapers, Inc. v. Keegan*, 201 Ariz. 344, ¶ 19 (App. 2001) (quoting *Carlson*, 141 Ariz. at 491).  It is the public official's burden to "demonstrate specifically how

production of the records would violate rights of privacy or confidentiality or would be detrimental to the best interests of the state." *KPNX-TV*, 183 Ariz. at 592; *see also Phx. Newspapers*, 201 Ariz. 344, ¶ 19. A party seeking to block disclosure must, under *Carlson*, demonstrate "the probability that specific, material harm will result from disclosure." *Mitchell v. Superior Court*, 142 Ariz. 332, 335 (1984) (voiding general rule keeping convicted offenders' presentence reports confidential).

¶13    The Town argues, as it did in the trial court, that a statutory exception applies because the shooter is a victim under § 13-4401. It urges that "a person can be a 'victim' for purposes of the statute even when the crime does not result in an arrest or formal criminal charges." It thus argues that A.R.S. § 39-121.04 applies and the "burden that would normally apply under the *Carlson* balancing test" is "flip[ped]," requiring Smith to "prove that [the] public's right to know outweigh[ed] the privacy interest" of the shooter.

¶14    Contrary to the Town's assertion, by statute, crime victims' rights, including those outlined in A.R.S. §§ 13-4401 through 13-4408, "attach when a defendant is arrested or formally charged." *Z.W. v. Foster*, 244 Ariz. 478, ¶ 3 (App. 2018); § 13-4402(A) (rights and duties established by § 13-4401 through 13-4408 "arise on the arrest or formal charging of the person or persons who are alleged to be responsible for a criminal offense against a victim"). And although there may be unique circumstances compelling a government entity to protect an individual's privacy interest as a presumptive victim, nothing in this record suggests that the shooter should be so characterized. As the trial court reasoned, "any criminal investigation was focused on the shooter," and we thus agree with the court's determination that the shooter cannot "fairly be characterized as a victim for purposes of disclosure law." It follows that Smith was not required to establish that the public interest in disclosure outweighed the shooter's right to privacy, given that § 39-121.04(A) does not apply.

¶15    The Town also challenges the trial court's application of the *Carlson* balancing test, arguing that participants in uncharged public actions carry a heightened privacy interest similar to the privacy interest of individuals, including suspects and victims, involved in criminal investigations before an arrest or the filing of charges. And, it observes, our legislature has been mindful of the privacy interests of criminal defendants in some contexts. *See, e.g.*, A.R.S. §§ 13-2813 (misdemeanor offense to knowingly disclose indictment, information, or complaint before taking defendant into custody or service of summons), 13-4051 (providing right to petition for record notation of having been cleared of charges after

wrongful arrest, indictment, or charge), 36-2862(C) (providing for sealing of conviction and other records related to expunged marijuana offenses), 41-1750 (outlining Department of Public Safety's duty to collect, store, and disseminate information related to certain criminal charges, arrests, and convictions), *see also* § 13-911 (providing for sealing of case records related to criminal offense after completion of sentence, dismissal of charges, acquittal, or declination of charges after arrest) (effective 2023).

¶16        However, the statutes the Town cites pertain to records associated with activity that has, at minimum, resulted in an arrest or formal charge for suspected criminal action. Here, the trial court properly concluded (albeit tacitly) that the privacy interest is different for individuals who have never been arrested for, charged with, or convicted of a crime. Notably, recorded past criminal conduct carries potential ramifications for future activities, such as applying for housing or employment, that uncharged conduct does not. *See* § 13-911(I)(5) (individuals whose records sealed pursuant to § 13-911 may state they have "never been arrested for, charged with or convicted of the crime that is the subject of the arrest or conviction, including in response to questions on employment, housing, financial aid or loan applications" absent certain exceptions).

¶17        During oral argument on appeal, the Town emphasized that changes in technology, in particular ready access to internet search engines, may increase the risk of harm involved in disclosing private actors' identities in public records requests. Such changes—which make publicly disclosed information both more accessible and potentially more intrusive of privacy interests—undoubtedly raise the stakes of disclosure. But they do not change the nature of the competing interests addressed under our current statutory scheme. And, whether those potential increased risks merit a substantive change in the law is for the legislature, not this court, to determine. *See Winkle v. City of Tucson*, 190 Ariz. 413, 415 (1997) (Arizona constitution "requires the judiciary to refrain from meddling in the workings of the legislative process"). Although we are sympathetic to the Town's reasoning that "the bell of releasing information cannot be unrung," outside of the context of past alleged criminal activity, the Town has not specifically demonstrated why the shooter's right to privacy in his actions taken in public outweighs the presumption of openness in public records. *See Schoeneweis*, 223 Ariz. 169, ¶¶ 22-23 (directing trial court to conduct *in camera* review of records relating to potential homicide, reasoning that "ongoing privacy interests of living crime victims . . . must be weighed against the need for public awareness of the government's performance of its law enforcement functions"); *cf. A.H. Belo Corp. v. Mesa Police Dep't*, 202 Ariz. 184, ¶¶ 12, 16-17 (App. 2002) (privacy interests of child and family

6

outweighed public interest in audio recording of 9-1-1 call containing "recorded suffering" of child while at home, particularly where transcript of call already publicly available).

¶18 Nor has the Town directed us to any case law suggesting the shooter has any special privacy interest in preventing the release of his name outside the context of victim or criminal rights. Our supreme court has reasoned that birth dates are private because they "are information usually restricted to a class of persons, typically family members and friends." *Scottsdale Unified*, 191 Ariz. 297, ¶ 16. Names, however, are not similarly withheld as private information made available to a smaller subsection of one's community. At oral argument, the Town noted that *Scottsdale Unified* is distinguishable because the public has a clear interest in knowing the identities of its school districts' employees. We agree that such a public interest may be particularly compelling. However, the Town's blanket policy of redacting names defeats the burden *Carlson* places on public entities to presumptively disclose information unless a specific privacy interest outweighs that disclosure. As Smith contended at oral argument, automatic redaction can potentially create a "black box" of information that might render government activity impervious to public scrutiny. And, in any event, the names of the employees were never at issue in *Scottsdale Unified*, which posed the question whether the birth dates of public school substitute teachers may be withheld consistent with public records laws, when those dates were available from other sources. 191 Ariz. 297, ¶¶ 1, 4, 8, 10. We identify no analogous privacy interest involved here, where the shooter engaged in a highly public altercation that attracted multiple witnesses and, as the trial court noted, resulted "in injury, hospitalization, and police intervention."

¶19 As the trial court reasoned, "*Carlson* requires more than reliance on generalities." The Town's abstract claims that "stigma" might "attach to being involved in potentially criminal but uncharged conduct" is "too abstract to overcome the presumption of disclosure that accompanies" our public record laws. Although the shooter may prefer not to have his identity disclosed, the Town's speculation as to the shooter's preference does not create a cognizable privacy interest that overcomes the "statutory policy favoring disclosure." *Carlson*, 141 Ariz. at 491. Further, in its speculation as to the generalized potential harms that might befall a private citizen whose public actions are disclosed through a public records request, the Town fails to identify any "specific, material harm" that "will result from disclosure." *Mitchell*, 142 Ariz. at 335.

**¶20**         The Town has suggested that Smith should have sought the name of the shooter by filing a John Doe civil case and requesting the name via subpoena. "[P]ublic records law was not intended to serve as a private discovery tool." *London v. Broderick*, 206 Ariz. 490, ¶¶ 16-17 (2003) (exempting from public disclosure employment file sought "solely as discovery in the pending disciplinary proceedings"). But, "[a] person's right to public records under [§ 39-121] is not conditioned on his or her showing, or a court finding, that the documents are relevant to anything." *Hodai v. City of Tucson*, 239 Ariz. 34, ¶ 7 (App. 2016) (first alteration added, second alteration in *Hodai)* (quoting *Bolm v. Custodian of Recs. of Tucson Police Dep't*, 193 Ariz. 35, ¶ 10 (App. 1998)). "The fact that the public record exists is sufficient to create a presumption requiring disclosure." *Id.*

**¶21**         The Town has therefore failed to present a tangible privacy interest that implicates any "sufficiently weighty reasons to tip the balance away from the presumption of disclosure." *Broderick*, 206 Ariz. 490, ¶ 9. We affirm the trial court's grant of relief to Smith on the issue of disclosure.

### Attorney Fees

**¶22**         The Town also argues the trial court abused its discretion in awarding Smith partial attorney fees. The Town cites its prompt production of requested (albeit redacted) records prior to litigation, the court's finding that the Town acted in good faith in making redactions, and the Town's position that the records sufficiently "outline the activities of the Town and its employees." The Town also contends, despite the fact that the court granted each of Smith's requests in the underlying action, that Smith did not substantially prevail and therefore Smith was not eligible for an award of fees.

**¶23**         The applicability of a fee-shifting statute is a question of law that we review de novo. *Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc.*, 198 Ariz. 10, ¶ 12 (App. 2000). Where a party has shown eligibility for a fee award, a trial court has "broad discretion to award or deny attorney fees and costs." *Am. C.L. Union of Ariz. v. Ariz. Dep't of Child Safety (ACLU-AZ)*, 251 Ariz. 458, ¶ 15 (2021). We review the court's fee award for an abuse of that discretion, and will affirm the award if it has any reasonable basis. *Id.* ¶ 11. "This deferential standard is necessary and appropriate in view of the court's superior understanding of the issues involved in the litigation and the desirability of avoiding frequent appellate review of what is essentially a factual issue." *Id.* ¶ 15.

¶24        In determining whether Smith was eligible for any fee award, we start with the text of the statute. Section 39-121.02(B) provides that the trial "court may award attorney fees and other legal costs that are reasonably incurred in any action" under the public records statutes "if the person seeking public records has substantially prevailed." A party substantially prevails when, taking into consideration "all of the claims or requests made by the requesting party," the party "was more successful than not in obtaining the requested records, defeating the government's denial of access to public records, or securing other relief concerning issues that were contested before the filing of an action." *ACLU-AZ*, 251 Ariz. 458, ¶ 17. In determining whether a party has substantially prevailed, the court may consider "all of the claims or requests made by the requesting party" in order to evaluate a party's "overall success in the litigation" with respect to "issues that were contested before litigation was initiated." *Id.* ¶¶ 17, 26, 28; *see also Paradigm DKD Grp., LLC v. Pima Cnty. Assessor*, 246 Ariz. 429, ¶¶ 24, 27-28 (App. 2019) (concluding government agency should not be penalized by requirement to pay fees when it provided records "above and beyond" original request, and thus vacating fee award insofar as it granted relief beyond originally contested issues).

¶25        Under this standard, Smith clearly substantially prevailed in the underlying action. The trial court's ruling granted Smith all of "the relief sought" in his petition to obtain the unredacted public records. He has, therefore, been "more successful than not in obtaining" the contested material—namely, the unredacted police records. *ACLU-AZ*, 251 Ariz. 458, ¶ 1.

¶26        The Town nonetheless urges us to find error in the trial court's award of fees, in light of that court's finding that the Town acted in good faith in refusing to proffer the unredacted records. Although good faith, or lack thereof, may be relevant to determining eligibility of an award of fees as a sanction, it is not relevant to eligibility here. As the Town notes, "The only substantive question before the trial court was whether the redactions of the names and images of involved parties complied with the public records law." The court decided this issue fully in Smith's favor and awarded him all relief he requested. The fact that the Town timely produced redacted records does not diminish the fact that Smith was compelled to initiate litigation to obtain the precise unredacted information he sought through his records request. Nor does the Town's good-faith belief that it had correctly balanced the privacy interests at stake obviate the litigation. As the Town notes, "[T]here was a genuine and very limited legal dispute regarding redactions to private citizen's information within the records." Although Smith's complaint made other factual allegations that

ultimately remained unresolved, the only legal issue before the court concerned the Town's limited redactions. It was well within the court's discretion to award fees in these circumstances.

¶27        The determination of what fee award is reasonable is also within the sound discretion of the trial court. *See Hodai*, 239 Ariz. 34, ¶ 41. The court reviewed Smith's application for fees, reduced the number of hours attributable to the "time spent connected to the dispute," and approved of the hourly charges. Because the court's fee determination is based on a reasonable interpretation of whether the billed activities were connected to the public records request, we affirm the award.

## Disposition

¶28        We affirm the trial court's rulings. Smith requests his attorney fees and costs on appeal. Because he has substantially prevailed on appeal, in our discretion, we award Smith his reasonable attorney fees on appeal, upon his compliance with Rule 21, Ariz. R. Civ. App. P., as well as his taxable costs. *See* §§ 12-341, 39-121.02(B).