221 P.3d 48

Scott SCHOENEWEIS, Personal Representative of the Estate of Gabrielle D. Schoeneweis, Petitioner,

v.

The Honorable Barbara HAMNER, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,

Dr. Mark Fischione, Maricopa County Medical Examiner; Michele Castaneda-Martinez, Director, Office of Vital Registration, Maricopa County Department of Public Health; Patricia Adams, Director, Office of Vital Records, Arizona Department of Health Services, Real Parties in Interest.

No. 1 CA–SA 09–0152.

Court of Appeals of Arizona, Division 1, Department A.

Dec. 1, 2009.

Gallagher & Kennedy, P.A. By Mark C. Dangerfield, Phoenix, Attorneys for Petitioner.

Maricopa County Office of General Litigation Services By Brad K. Keogh, Phoenix, Attorneys for Real Parties in Interest Fischione and Castaneda–Martinez.

Terry Goddard, Attorney General By Donald P. Schmid, Assistant Attorney General, Phoenix, Attorneys for Real Party in Interest Adams.

## OPINION

SWANN, Judge.

¶ 1 This special action arises under the Arizona Public Records Law, A.R.S. § 39–121, *et seq.* Scott Schoeneweis ("Petitioner") challenges the probate court's refusal to enjoin three governmental agencies, the Maricopa County Medical Examiner, the Office of Vital Records in the Arizona Department of Health Services and the Office of Vital Registration in the Maricopa County Department of Public Health, from disclosing to the public the death certificate, autopsy reports and all other documents discussing the cause of death of his wife, Gabrielle Schoeneweis. We stayed release of the records at issue pending decision of the legal issues presented.[1] This is that decision.

¶ 2 We hold that because significant privacy concerns may preclude release of many medical examiners' records and related documents, a court must conduct an *in camera* review before permitting the release of such records pursuant to the Arizona Public Records Law. When the records concern the discovery or investigation of a death caused by potential criminal conduct, privacy concerns must yield to the extent necessary to inform the public of the government's investigation of criminal conduct and its efforts to protect other victims of that conduct. We also hold that death certificates are not subject to public inspection under the Arizona Public Records Law.

## FACTS AND PROCEDURAL HISTORY

¶ 3 On May 20, 2009, detectives from the Maricopa County Sheriff's Office and Fire EMS personnel responded to a 911 call from the Schoeneweis residence. Gabrielle Schoeneweis ("Ms. Schoeneweis") was pronounced dead at the scene.

¶ 4 An investigation of Ms. Schoeneweis's death by the Maricopa County Sheriff's Office revealed evidence that Ms. Schoeneweis had died of an overdose of cocaine and lidocaine, and that her use of cocaine may have caused harm to another person.[2] After Petitioner was appointed as personal representative of Ms. Schoeneweis's estate, he filed an application requesting that the probate court seal Ms. Schoeneweis's death certificate and any other documents concerning the cause of her death. The probate court heard argument and, without conducting an *in camera*

---

1. Our order setting the briefing schedule in this matter allowed time for any requestor who sought the records at issue from the real-parties-in-interest to seek leave to intervene. No requestor sought to participate in these proceedings.

2. The cause of death has not been made public before the publication of this Opinion. Though we remand this case to the trial court for a fact-sensitive *in camera* review of the entire body of materials at issue, that central fact appears clearly in the record. We choose to reveal the fact in this Opinion to provide guidance in this and future cases, and because we hold as a matter of law that it is subject to disclosure without the need for further balancing.

inspection of the documents, denied the request in its entirety. Although the probate court was not unsympathetic to Petitioner's privacy concerns, it reasoned that "personal concerns do not constitute grounds to seal or redact public documents." Thereafter, Petitioner filed this petition for special action relief and application for stay.

## JURISDICTION AND STANDARD OF REVIEW

■ ¶ 5 " 'Special action jurisdiction is appropriate when there is no plain, speedy and adequate remedy by way of appeal' or 'in cases involving a matter of first impression, statewide significance, or pure questions of law.' " *Phoenix Newspapers, Inc. v. Ellis*, 215 Ariz. 268, 270, ¶ 9, 159 P.3d 578, 580 (App.2007) (quoting *Roman Catholic Diocese v. Superior Court*, 204 Ariz. 225, 227, ¶ 2, 62 P.3d 970, 972 (App.2003)). "Because an appeal offers no adequate remedy for the prior disclosure of privileged information, special action jurisdiction is proper to determine a question of privilege." *Sun Health Corp. v. Myers*, 205 Ariz. 315, 317, ¶ 2, 70 P.3d 444, 446 (App.2003) (citing *Yuma Reg'l Med. Ctr. v. Superior Court*, 175 Ariz. 72, 74, 852 P.2d 1256, 1258 (App.1993)). Accordingly, we accept jurisdiction to review the superior court's ruling that wholesale disclosure of documents pertaining to Ms. Schoeneweis's death is required by the Public Records Law.

■ ¶ 6 The question whether a document is a "public record" under Arizona's Public Records Law is one of law, which we review de novo. *Griffis v. Pinal County*, 215 Ariz. 1, 3, ¶ 7, 156 P.3d 418, 420 (2007). A superior court's denial of access to public records is also subject to de novo review. *See Ellis*, 215 Ariz. at 271, ¶ 13, 159 P.3d at 581. Similarly, we review de novo the superior court's decision to grant access to public records.

## DISCUSSION

■ ¶ 7 The determination whether the Public Records Law requires disclosure of a record entails a two-stage analysis. *Griffis*, 215 Ariz. at 5, ¶ 13, 156 P.3d at 422. "When the facts of a particular case 'raise a substan-

tial question as to the threshold determination of whether the document is subject to the statute,' the court must first determine whether that document is a public record." *Id.* (quoting *Salt River Pima–Maricopa Indian Cmty. v. Rogers*, 168 Ariz. 531, 536, 815 P.2d 900, 905 (1991)). "If a document falls within the scope of the public records statute, then the presumption favoring disclosure applies and, when necessary, the court can perform a balancing test to determine whether privacy, confidentiality, or the best interest of the state outweigh the policy in favor of disclosure." *Id.* (citing *Carlson v. Pima County*, 141 Ariz. 487, 490–91, 687 P.2d 1242, 1245–46 (1984)).

### I. The Records at Issue Are "Public Records."

■ ¶ 8 Arizona's Public Records Law "provide[s] a broad right of inspection to the public." *Carlson*, 141 Ariz. at 489, 687 P.2d at 1244 (construing the then current version of A.R.S. § 39–121). A.R.S. § 39–121 (2001) provides:

> Public records and other matters in the custody of any officer shall be open to inspection by any person at all times during office hours.

■ ¶ 9 Although A.R.S. § 39–121.01 (Supp.2008) does not define the term "public records," numerous appellate decisions offer guidance. Central to the determination of whether a document is a public record is "the nature and purpose of the document" rather than "the place where it is kept." *Salt River*, 168 Ariz. at 538, 815 P.2d at 907 (quoting *Linder v. Eckard*, 261 Iowa 216, 152 N.W.2d 833, 835 (1967)). In *Mathews v. Pyle*, our supreme court held that the statute applies to:

> [A record] which is required by law to be kept, or necessary to be kept in the discharge of a duty imposed by law or directed by law to serve as a memorial and evidence of something written, said or done.

75 Ariz. 76, 78, 251 P.2d 893, 895 (1952) (citing *Robison v. Fishback*, 175 Ind. 132, 93 N.E. 666, 669 (1911); *Amos v. Gunn*, 84 Fla. 285, 94 So. 615, 634 (1922); *Steiner v. McMillan*, 59 Mont. 30, 195 P. 836, 837

(1921)). At issue in this case is the disclosure of three types of documents: an autopsy report (which includes photographs), investigative records and a death certificate. We turn our examination to whether these documents are public records.

## A. The Autopsy Report and Investigative Records Are "Public Records."

¶ 10 Pursuant to A.R.S. § 11–594(A)(2) (Supp.2008), a county medical examiner is required to direct a death investigation, certify the cause and manner of death following the investigation, and "reduce the findings to writing and promptly make a full report on forms prescribed for that purpose." In the event that an autopsy is performed, A.R.S. § 11–597(E) (Supp.2008) requires "a full record or report of the facts developed by the autopsy in the findings of the person performing the autopsy shall be properly made and filed in the office of the county medical examiner or the board of supervisors." Because a medical examiner or other qualified person performing the autopsy is statutorily required to memorialize the findings derived from the autopsy, the report filed with the county medical examiner pursuant to A.R.S. § 11–597 is therefore a public record.

¶ 11 We further conclude that the autopsy photographs are public records. In *Mathews*, the supreme court noted that public records include:

a written record of transactions of a public officer in his office, which is a convenient and appropriate method of discharging his duties, and is kept by him as such, whether required by express provisions of law or not.

75 Ariz. at 78, 251 P.2d at 895 (citing *People v. Purcell*, 22 Cal.App.2d 126, 70 P.2d 706 (1937); *State v. Ewert*, 52 S.D. 619, 219 N.W. 817 (1928)). Photographs taken during an autopsy conducted by the government fall squarely within this definition. Such photographs are legally and scientifically efficient means of documenting the steps undertaken in performing the autopsy and may also support the findings of the medical examiner.

¶ 12 The documents in the possession of the medical examiner also include materials that are more investigative than medical in nature. These documents include summaries of information provided by witnesses and photographs of the scene. We conclude that because these documents were prepared and maintained by a state entity in furtherance of its official duties, they similarly fall within the scope of the Public Records Law.

## B. The Death Certificate Is a "Public Record."

¶ 13 The medical examiner is required by law to "[e]xecute a death certificate provided by the state registrar of vital statistics indicating the cause and the manner of death." A.R.S. § 11–594(A)(4) (Supp. 2008). In view of the mandatory nature of the record, we conclude that death certificates are public records.

## II. The Trial Court Erred in Ruling That All Documents at Issue Are Subject to a General Right of Inspection.

¶ 14 It is settled law in Arizona that "[d]espite the unlimited disclosure expressed by the wording of § 39–121, the availability of records for public inspection is not without qualification." *Carlson*, 141 Ariz. at 490, 687 P.2d at 1245. Public records are not available for inspection when they are made confidential by statute, when the public interest in disclosure is outweighed by privacy concerns, or when the right to disclosure is outweighed by the best interests of the State.[3] *Id.; Phoenix Newspapers, Inc. v. Keegan*, 201 Ariz. 344, 348–49, ¶¶ 18–19, 35 P.3d 105, 109–10 (App.2001). This case requires us to consider whether statutory exemptions or privacy interests preclude public inspection of some or all of the records at issue.

¶ 15 Petitioner argues that the medical examiner's findings contained in the autopsy records and death certificate are not subject to disclosure under the Public Records Law because they are privileged and confidential pursuant to A.R.S. § 12–2292 and are statu-

**3.** The "best interests" exception to the presumptive right of inspection is not at issue in this case. We consider only statutory exemptions and privacy interests.

torily exempt from disclosure pursuant to §§ 36–324 and –342. Petitioner further argues that strong personal privacy interests should preclude public inspection.

### A. The Medical Examiner's Determination of the Cause of Death Is Not Privileged Pursuant to A.R.S. § 12–2292.

¶ 16 Petitioner argues that A.R.S. § 12–2292 provides an exemption to the Public Records Law that prevents the release of the autopsy report to the general public. We disagree. The statute provides that "[u]nless otherwise provided by law, all medical records and payment records, and the information contained [therein], are privileged and confidential." A.R.S. § 12–2292 (Supp.2008). The term "medical records" is defined in A.R.S. § 12–2291(5) (Supp.2008) to mean "all communications related to a patient's physical or mental health or condition that are recorded in any form or medium and that are maintained for *purposes of patient diagnosis or treatment.*" (Emphasis added.)

¶ 17 No Arizona decision has ever applied the statutory privilege or its common law antecedent to an autopsy. In view of the well-recognized purpose of the privilege, this is not surprising. "The physician-patient privilege, codified in Arizona at A.R.S. §§ 12–2235 and 12–2292, exists to foster a patient's 'full and frank disclosure of medical history and symptoms' to his or her physician in order to facilitate the best possible medical treatment." *Carondelet Health Network v. ·Miller,* 221 Ariz. 614, 616, ¶ 6, 212 P.3d 952, 954 (App.2009) (citing *Lewin v. Jackson,* 108 Ariz. 27, 31, 492 P.2d 406, 410 (1972)). Neither the language nor the purpose of the statute suggests that it applies to autopsies.

¶ 18 The purpose of an autopsy is fundamentally different from the diagnosis and treatment of a living patient. Specifically, A.R.S. § 11–594 requires the county medical examiner or a licensed physician to conduct an autopsy when the circumstances surrounding the death are unusual, or the government has an interest in protecting the public or persons in custody of the government. *See* A.R.S. § 11–593(A)(2)–(9) (Supp. 2008). An autopsy involves no communication between physician and patient, and by definition there is no "diagnosis" for purposes of potential treatment. Though an autopsy report may contain information related to the physical health or condition of the decedent, it is created for the primary purpose of determining the cause of death.

¶ 19 Because a determination of the cause of death is not made for the purposes of diagnosis or treatment, we hold that an autopsy report is not statutorily privileged for purposes of the Public Records Law. *Cf. Catrone v. Miles,* 215 Ariz. 446, 452, ¶¶ 14–15, 160 P.3d 1204, 1210 (App.2007) (holding the medical privilege for medical records inapplicable because the "formulation of an educational plan for students with disabilities in a school setting is not the same as the diagnosis and treatment of a person with disabilities in a medical setting."). Accordingly, we conclude that no statutory privilege bars the release of the autopsy records.

### B. Death Certificates May Not Be Disclosed to the General Public.

¶ 20 Though the Legislature has not proscribed public inspection of the general investigative activities of medical examiners, it has specifically addressed the public's right to inspect death certificates. A.R.S. § 36–324(A) (2009) provides:

On written request, a local registrar, a deputy local registrar or the state registrar shall issue a certified copy of a registered certificate, except the portion of the certificate that contains medical information, to any person determined to be eligible to receive the certified copy pursuant to criteria prescribed by rules.

And A.R.S. § 36–342(B) provides:

Except as authorized by law, a local registrar, a deputy local registrar or the state registrar or their employees shall not:

1. Permit inspection of a vital record or evidentiary document supporting the vital record.

2. Disclose information contained in a vital record.

3. Transcribe or issue a copy of all or part of a vital record.

Consistent with the rulemaking authority created by A.R.S. § 36–324, Arizona Administrative Code R9–19–405 provides that "[a] certified copy of a death certificate may be issued to any applicant with a legal or other vital interest in the record or upon order of a court with competent jurisdiction." The rule limits those who have a "legal or other vital interest" to seven specific categories of persons, none of which include the general public. While these provisions allow for dissemination of vital records to certain government agencies, they evince a clear legislative intent to prohibit the inspection or disclosure of medical information contained in a death certificate.[4] Accordingly, we conclude that the court erred by refusing to prohibit the public release of Ms. Schoeneweis's death certificate.

## C. Because It Failed to Conduct an *In Camera* Inspection, the Probate Court Did Not Properly Weigh Privacy Concerns Against the Policy In Favor Of Disclosure.

¶ 21 The Public Records Law serves the primary purpose of ensuring that the people are able to monitor the activities of their government, not the lives of their fellow citizens.[5] *See Lake v. City of Phoenix,* 222 Ariz. 547, 549 ¶ 7, 218 P.3d 1004, 1006 (2009). Therefore, when the performance of important government functions is implicated, the interest in disclosure is strong and privacy interests must often yield. But when records of government action are merely incidental to an otherwise private matter, including the death of an individual, privacy interests weigh more heavily. This case involves a death and potential injuries to another that occurred as a result of potential or apparent unlawful conduct, and the government's response to that situation merits public scrutiny. Many cases involve no such concerns, and in those cases privacy interests might well justify the withholding of all autopsy documents from public view.

¶ 22 Petitioner asked the probate court to conduct an *in camera* inspection before determining whether the documents were subject to disclosure to the public. The court declined to do so. Although no Arizona decision imposes a per se rule requiring an *in camera* inspection of public records (and we do not announce one here), the necessity of such a review becomes nearly inescapable when the court contemplates the release of documents that inherently raise significant privacy concerns. In *Carlson,* the court noted:

> These qualifications as to public access do not preclude inspection entirely even where the competing interests of the common law limitations override the public's right to inspect certain documents. Particularly where the competing interest is one of confidentiality or privacy, a practical alternative to the complete denial of access would be deleting specific personal identifying information, such as names. Other alternatives exist. In *Mathews v. Pyle,* we ordered an *in camera* inspection of the document by the trial court for judicial consideration of whether the *Mathews* interest-balancing applied.

141 Ariz. at 490–91, 687 P.2d at 1245–46 (internal citations omitted). In the circumstances of this case, we conclude that the failure to conduct an *in camera* review to balance the competing interests of privacy and access amounts to an abuse of discretion. We therefore grant relief and direct the superior court to review *in camera* the documents at issue and employ the tools identified in *Carlson* as appropriate.

¶ 23 In this case, *in camera* review will surely lead to the determination that many of the records are not appropriately subject to public inspection. For example, it is difficult to conceive of circumstances that would justify the public disclosure of autopsy photographs here. Other privacy concerns,

---

4. We note that "[M]ost courts have refused to exempt autopsy reports or death certificates from public records laws absent a specific statutory exemption." Op. Ariz. Att'y Gen. I88–130.

5. The "public interest" is not synonymous with "public curiosity." Petitioner is a prominent sports figure, but this does not affect our analysis in any way. The principle of equal treatment under law is fundamental and the tenets of open government embodied in the Public Records Law are not altered by the relative fame or obscurity of those involved.

including the ongoing privacy interests of living crime victims, must be weighed against the need for public awareness of the government's performance of its law enforcement functions. Upon completion of a thorough review .of· the specific records .at issue, the superior court will be in a position to enter an order carefully tailored to the facts of each case.

**CONCLUSION**

¶ 24 For the foregoing reasons, we accept jurisdiction, grant relief and direct the superior court to conduct an *in camera* review in accordance with this opinion. We deny relief to the extent that Petitioner seeks an order precluding release of all documents at issue.

CONCURRING: MARGARET H. DOWNIE and JOHN C. GEMMILL, Judges.