NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

J.D. BALL, *Plaintiff/Appellant*,

*v.*

ARIZONA DEPARTMENT OF HEALTH SERVICES, et al.,
*Defendants/Appellees*.

No. 1 CA-CV 21-0134
FILED 12-28-2021

Appeal from the Superior Court in Maricopa County
No. CV2020-012030
The Honorable Sara J. Agne, Judge

**AFFIRMED**

COUNSEL

J.D. Ball, Scottsdale
*Plaintiff/Appellant*

Sherman & Howard LLC, Phoenix
By Gregory W. Falls, Craig A. Morgan
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

---

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Brian Y. Furuya joined.

---

**B R O W N**, Judge:

¶1　　　　J.D. Ball appeals the superior court's order denying his special action complaint filed under Arizona's public records statute, A.R.S. § 39-121.　Ball challenges several of the court's scheduling, discovery, and evidentiary rulings, as well as the court's decision denying him access to COVID-19 records in the custody of the Arizona Department of Health Services ("ADHS").　Because the court acted within its discretion in deciding issues unrelated to the merits, and reasonable evidence supports the court's ruling that the records Ball sought are not subject to disclosure, we affirm.

**BACKGROUND**

¶2　　　　Ball is writing a book about COVID-19.　In June 2020, he sent ADHS a public records request seeking access to the records ADHS relied on when preparing its COVID-19 publications, including its COVID-19 dashboard.　ADHS denied the request, explaining it could not divulge private medical information, communicable disease information, or death certificates.　Ball then sent ADHS an addendum, stating in part he was not seeking any personal health-related data, but only public records proving that COVID-19 "exists as a pandemic virus" and is a communicable disease in Arizona.　ADHS, through legal counsel, again denied the request.

¶3　　　　In response, Ball sent ADHS a letter demanding it "[c]ease and desist the illegal activity of publishing false information," and alleged ADHS was committing treason by selectively reporting on COVID-19 to "influence a COVID-19 pandemic catastrophe."　When ADHS did not respond, Ball sought special action relief in the superior court.　Ball asked the court to compel ADHS to disclose "the source of the data used to create the COVID-19 dashboard" so he could "confirm the accuracy of the information released to the public."　Specifically, he requested records relating to confirmed cases, testing, death certificates, hospitalization and ventilator use.　Ball also demanded answers to a number of administrative, political, and scientific questions.　For example, in his complaint Ball

demanded ADHS explain why it uses some kinds of COVID-19 tests over others, why Arizona's infection rates were above the national average, what type of oversight ADHS has implemented, and why the media is allowed to publish false information.

¶4            The court ordered ADHS to show cause for denying the request, and a hearing was scheduled for November 17, 2020.  The court then granted ADHS a continuance because of a scheduling conflict, delaying the matter until November 20.  At the hearing, the parties seemed to agree that direct examination would be submitted through witness declarations instead of live testimony.  The parties expressly agreed to submit all exhibits to the court by November 25.  The court then scheduled an evidentiary hearing for December 4.

¶5            On November 25, Ball filed an emergency motion to extend the deadline for filing exhibits, claiming his computer crashed when he attempted to upload his exhibits, and thus some of them would need to be filed with the court after 5:00 p.m.  Additionally, Ball never disclosed or submitted witness declarations; instead, he submitted a list of witnesses he wished to call at the hearing.  Ball then sought another extension, asking the court to accept additional exhibits submitted after November 25 because he had to be taken to the hospital by ambulance on November 27 for treatment of an injury to his hand.

¶6            The court issued an order taking under advisement all exhibits delivered to the court by November 25, regardless of when they were submitted.  The court rejected exhibits delivered after that date and excluded Ball's witnesses because he did not follow the stipulation to submit declarations.  The court also converted the December evidentiary hearing to an oral argument.

¶7            During oral argument, Ball noted he was on medication due to his injury, but he did not ask for a continuance or suggest he was unable to participate in the proceedings.  Nor did he object to the court's order changing the evidentiary hearing to an oral argument or ask the court to schedule another evidentiary hearing.  At the conclusion of oral argument, Ball indicated that he had no additional issues to discuss, and the court took the matter under advisement.  Ball did not raise any issues pertaining to the oral argument in any subsequent filings.

¶8            After additional pleadings were filed, the court accepted special action jurisdiction and issued its ruling.  First, the court admitted into evidence and presumably considered the 90 exhibits Ball delivered to

the court by the deadline date. Second, the court noted that much of what Ball requested were answers to investigative and philosophical questions, and therefore fell outside the realm of a public records request. Third, to the extent Ball's complaint included legitimate requests for public records from ADHS, the court declined to order disclosure and dismissed the lawsuit with prejudice. After Ball unsuccessfully moved for reconsideration, he timely appealed. We have jurisdiction pursuant A.R.S. § 12-120.21(A)(1).

**DISCUSSION**

**¶9**         As an initial matter, ADHS asserts that Ball's opening brief does not comply with the requirements of ARCAP 13(a), and requests that we sanction him by dismissing the appeal. *See* ARCAP 25; *Adams v. Valley Nat. Bank of Ariz.*, 139 Ariz. 340, 342 (App. 1984). Although the opening brief is deficient in many ways, we decline to dismiss the appeal. Instead, we address the merits to the extent Ball identifies arguable issues. *See id.*

**A.         Scheduling and Evidentiary Challenges**

**¶10**         Ball challenges several of the superior court's scheduling, discovery, and evidentiary rulings. We review scheduling orders and the denial of a continuance for an abuse of discretion. *See In re MH 2007-001264*, 218 Ariz. 538, 539, ¶ 5 (App. 2008); *Reid v. Reid*, 222 Ariz. 204, 206, ¶ 8 (App. 2009). Additionally, we "will affirm a trial court's admission or exclusion of evidence absent a clear abuse of discretion or legal error and resulting prejudice." *Belliard v. Becker*, 216 Ariz. 356, 358, ¶ 13 (App. 2007).

**¶11**         Ball argues the court abused its discretion in setting the initial disclosure deadline, asserting "the court clearly favored [ADHS] and placed Plaintiff on an impossible timeline." He explains that the deadline was unworkable because it overlapped with Thanksgiving and only gave him three business days to prepare his exhibits. For the same reasons, Ball argues the court erred (1) by not extending the exhibit disclosure deadline to the December date listed in his second motion to extend, and (2) in excluding his exhibits filed after November 25.

**¶12**         The superior court has broad discretion in ruling on discovery and disclosure deadlines, and has authority to impose penalties for failing to comply. *See* Ariz. R. Civ. P. 16(h)(1)(A), (j); Ariz. R. Civ. P. 37(b)(2)(A)(ii), (c)(1), and (c)(4); *Granger v. Wisner*, 134 Ariz. 377, 381 (1982). Here, the court gave Ball the option of setting the deadline for November 30, but he stated that November 25 would be fine. Parties are generally bound by their own stipulations unless relieved by the court. *Harsh Bldg. Co. v. Bialac*, 22

Ariz.App. 591, 593 (1975).  On these facts, we cannot say the court abused its discretion in either setting this deadline or refusing to extend it, especially considering both parties had the same amount of time and agreed to this timeframe.

**¶13**        Ball next argues that an extension to file his exhibits was warranted because of his crashed computer and hand injury.  However, the court granted his initial motion to extend due to the computer crash, taking under advisement all exhibits submitted on November 25 and eventually admitting 90 of them.  Moreover, Ball's injury occurred on November 27, after the deadline already lapsed, so it had no bearing on his ability to comply with the court's order.  No abuse of discretion occurred.

**¶14**        Ball suggests the court abused its discretion by converting the December evidentiary hearing to an oral argument, by not continuing the oral argument due to his injury, and by not allowing him to call witnesses. He contends the court denied him due process by not allowing him more time to submit exhibits and prepare for oral argument, especially considering his injury and the fact that the court granted ADHS a continuance on an earlier hearing.  But Ball did not raise these issues in the superior court, and never asked that court to postpone the December oral argument or schedule an evidentiary hearing.  *See Englert v. Carondelet Health Network*, 199 Ariz. 21, 26, ¶ 13 (App. 2000) (stating that we generally do not consider issues raised for the first time on appeal).  On appeal, Ball does not cite authority to develop his due process claim, nor does he support it with argument other than vague assertions that "[d]ue process requires all parties are treated fairly."   Thus, Ball has waived these arguments.  *See MacMillan v. Schwartz*, 226 Ariz. 584, 591, ¶ 33 (App. 2011) (holding that a party waives issues he or she fails to develop or support in the opening brief).

### B.    Substantive Issues

**¶15**        "Public records and other matters in the custody of any officer shall be open to inspection by any person at all times during office hours." A.R.S. § 39-121.   "Any person may request to examine or be furnished copies, printouts or photographs of any public record during regular office hours or may request that the custodian mail a copy of any public record not otherwise available on the public body's website to the requesting person."  A.R.S. § 39-121.01(D)(1).  Public records are broadly defined, and a strong presumption exists in favor of disclosure. *Griffis v. Pinal Cnty.*, 215 Ariz. 1, 3, ¶ 8 (2007).  However, the public's right to access public records is not absolute. *Carlson v. Pima Cnty.*, 141 Ariz. 487, 490 (1984).  Our legislature

has adopted a number of statutory exceptions to public records disclosure, *id.*, including those we discuss below. We review de novo the denial of a public records request, but otherwise review the court's order for an abuse of discretion. *W. Valley View, Inc. v. Maricopa Cnty. Sheriff's Office*, 216 Ariz. 225, 227, ¶ 7 (App. 2007).

¶16          The court found that the records were either confidential medical information or death certificates, and therefore shielded from Ball's public records request. Ball argues this was error, asserting he was not requesting medical information and that death certificates are already publicly available.

### 1.      Medical Information/Records

¶17          ADHS did not specifically take the position that medical information was categorically protected. Rather, ADHS asserted only that some of the records contained medical information obtained by an enhanced surveillance advisory, and therefore those specific records were protected under A.R.S. § 36-784. That said, we agree with the superior court, and Ball does not argue otherwise, that medical information is categorically protected from public disclosure, unless an exception applies. As mandated by the legislature, "[u]nless otherwise provided by law, all medical records and payment records, and the information contained in medical records and payment records, are privileged and confidential." A.R.S. § 12-2292(A). Because medical records have been deemed confidential by statute, they are not available for public inspection. *See Schoeneweis v. Hamner*, 223 Ariz. 169, 173, ¶ 14 (App. 2009). Medical records include what the superior court referred to as "medical information," as medical records are statutorily defined as "all communications related to a patient's physical or mental health or condition that are recorded in any form or medium and that are maintained for purposes of patient diagnosis or treatment, including medical records that are prepared by a health care provider or by other providers." A.R.S. § 12-2291(6). And although the court did not draw the connection between medical information and the medical records statute, we will affirm the court's ruling if it is correct for any reason. *State v. Carlson*, 237 Ariz. 381, 387, ¶ 7 (2015).

¶18          Ball contends he did not seek confidential medical information or records. Besides death certificate data, Ball specifically requested data concerning confirmed cases, hospitalizations, laboratory testing, hospital bed usage and availability, ventilator usage and

availability, and "COVID-19 specific metrics."[1]  Logically, these broad categories include medical information that falls under the definition of medical records.  Ball points to no other kinds of source data that would fit into his requested categories of documents.  In his reply brief, Ball asserts that any identifiable information, such as names or social security numbers, could be redacted.  However, confidentiality protection is not limited to the patient's identity.  *See* § 12-2292(A).  And even if signifiers were redacted, a danger remains that patient identity could be inferred.  On this record, the court did not err in finding Ball sought confidential medical records protected from disclosure.

### 2.    Communicable Disease Information

**¶19**         ADHS also asserted the records are protected from disclosure because they contain communicable disease information.  Under A.R.S. § 36-664(A), "[a] person who obtains communicable disease related information . . . shall not disclose or be compelled to disclose that information except as authorized by state or federal law," unless certain enumerated exceptions apply.  The court did not explicitly hold that the records Ball requested were confidential communicable disease records under § 36-664, holding only that Ball waived any argument that the confidentiality exceptions applied.  Again, we will affirm if the ruling is correct for any reason.  *Carlson*, 237 Ariz. at 387, ¶ 7.

**¶20**         Ball argues that "[t]o be protected under ARS [§] 36-664([A]) ADHS has to prove the existence of a pandemic. [It] can't hide behind a pandemic law to avoid proving there is a pandemic with number[s] that are mathematically impossible."  Ball further contends that ADHS must prove COVID-19 "is more infection than other annual flu season, its highly contagious and deadly."  But Ball misinterprets the statute.  Section 36-664(A) contains no requirement that the State prove a pandemic exists, or that the condition is more prevalent than any other virus; the only requirement is that the records concern a communicable disease.  No one disputes that COVID-19 is a communicable disease, as Ball concedes in his motion for reconsideration.  Presumably, the types of source data Ball requested would include communicable disease information as defined by statute, and Ball does not identify any source data that would not include this information.  Thus, in addition to being protected as medical records,

---

[1]     This term's meaning is not obvious, and Ball offers no clear explanation.

the requested records are also protected under § 36-664(A) because they concern communicable disease information.

**¶21** Ball next asserts the court "erred by ruling on false evidence contradicting the pleading and the evidence . . . used for the ruling." Ball appears to take issue with the court's holding that he waived any exceptions to the communicable disease provision. He argues he never denied a communicable disease exists, but instead was seeking whatever proof ADHS had regarding their claims that COVID-19 exists, is a communicable disease, and a pandemic. Regardless, Ball provided no argument, either in the superior court or on appeal, that any of the exceptions applied to his request, so we affirm the court's finding of waiver. Waiver aside, our review of the statute and the record does not reveal any exceptions that could possibly apply. *See* § 36-664(A)(1)–(19).

### 3. Death Certificates

**¶22** Ball also argues the court erred in finding he was not entitled to death certificate information. He contends that death certificates are already in the public domain and that he was merely requesting ADHS to organize the certificates "by the cause of death being COVID-19." Regardless of whether death certificates are available from public sources, the issue here is whether Arizona law permits ADHS to disclose them. Arizona law plainly states that the state registrar is prohibited from (1) allowing "the inspection of a vital record or evidentiary document supporting the vital record," (2) disclosing "information contained in a vital record," or (3) transcribing or issuing "a copy of all or part of a vital record." A.R.S. § 36-342(B).[2] And although our vital statistics law makes exceptions for certain people, *see* A.R.S. § 36-324(A), journalists do not fall under those categories. *See* Ariz. Admin. Code § R9-19-314(B); *see also Schoeneweis*, 223 Ariz. at 175, ¶ 20 (holding that § 36-324 exempts death certificates from the public records law). We affirm the court's decision denying access to death certificates.

---

[2] "The director of the department is the state registrar of vital records," A.R.S. § 36-302(A), and "'[d]epartment' means the department of health services," A.R.S. § 36-101(2).

## CONCLUSION

**¶23** For the foregoing reasons, we affirm the superior court's order dismissing Ball's amended complaint. ADHS requests attorneys' fees as a sanction under ARCAP 25. In our discretion, we deny the request.

