IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

---

BARRY GOLDWATER INSTITUTE FOR PUBLIC POLICY
RESEARCH CENTER,
*Plaintiff/Appellant,*

*v.*

CITY OF PHOENIX, et al., *Defendants/Appellee*s.

No. 1 CA-CV 24-0176

FILED 01-31-2025

---

Appeal from the Superior Court in Maricopa County
No. CV2023-003250
The Honorable Danielle J. Viola, Judge

**REMANDED**

---

COUNSEL

Goldwater Institute, Phoenix
By Jonathan Riches, Scott Day Freeman, Parker Jackson
*Counsel for Plaintiff/Appellant*

Pierce Coleman, PLLC, Scottsdale
By Stephen B. Coleman, Jon M. Paladini
*Counsel for Defendants/Appellees*

American Civil Liberties Union Foundation of Arizona, Phoenix
By Jared G. Keenan, Lauren K. Beall
*Co-Counsel for Amicus Curiae Poder in Action & American Civil Liberties
Union Foundation of Arizona*

Arizona State University Sandra Day O'Connor College of Law, Phoenix
By Gregg P. Leslie, Aaron A. Baumann, Aaron Savoy (Rule 39 student)
*Co-Counsel of Amicus Curiae Poder in Action & American Civil Liberties Union
Foundation of Arizona*

––––––––––––––––––––––––––––

**OPINION**

Judge Samuel A. Thumma delivered the opinion of the Court, in which
Presiding Judge Maria Elena Cruz and Judge Andrew M. Jacobs joined.

––––––––––––––––––––––––––––

**T H U M M A**, Judge:

¶1 Appellant Barry Goldwater Institute for Public Policy Research (Goldwater) challenges an order denying its statutory special action complaint seeking to compel the City of Phoenix and certain City officials (collectively, the City) to disclose public records related to then-pending labor negotiations. For the reasons set forth below, this matter is remanded to allow the City to provide to the superior court both unredacted and redacted versions of responsive documents for an in camera review to determine what portions of those documents, if any, may be withheld under the best interests of the state exception to the requirement that public records be disclosed.

**FACTS AND PROCEDURAL HISTORY**

¶2 In a series of lengthy, complicated arrangements, each called a Memorandum of Understanding (MOU), the City and groups of City employees called Units agree to terms of employment. These MOUs are the product of a complicated, multi-step meet and confer bargaining process undertaken from time to time. The Phoenix City Code, including a meet and confer Ordinance, guides that bargaining process. Among other things, the Ordinance includes a prohibition period, where bargaining groups cannot discuss matters being negotiated with City Council members. A proposed MOU resulting from this meet and confer process is made available for public comment before being considered for approval by the City Council. MOUs apparently build on prior approved MOUs, with many identical terms but also new or different terms.

¶3	The City negotiates separately and simultaneously with these Units in this meet and confer process. The specific Unit at issue here is "Police officers—Below the rank of Sergeant," represented by the Phoenix Law Enforcement Association (PLEA).

¶4	The substantive provisions of these City-PLEA MOUs have resulted in significant litigation. *See Gilmore v. Gallego,* ___ Ariz. ___, ___, 552 P.3d 1084 (2024); *Cheatham v. DiCiccio*, 240 Ariz. 315 (2016); *see also PLEA v. City of Phx.*, No. 1 CA-CV 23-0454 (Ariz. App. Aug. 27, 2024) (mem. decision). Those substantive provisions are not at issue here. Instead, this dispute is whether the City had to disclose to Goldwater draft MOU proposals exchanged between the City and PLEA during the meet and confer process leading up to the City-PLEA MOU effective July 1, 2023 through June 2024 (the 2024 MOU).

¶5	On December 1, 2022, PLEA gave the City written notice it wanted to negotiate wage and benefit issues leading up to what became the 2024 MOU. Although the City Code required PLEA to provide a proposed MOU along with that notice, City Code § 2-218(B), PLEA failed to do so. On January 3, 2023, the City wrote PLEA that its December 1, 2022 notice did not comply with the City Code but that the City looked forward to working with PLEA in negotiating the 2024 MOU.

¶6	Apparently having learned of PLEA's December 1 notice, on December 19, 2022, Goldwater sent a public records request to the City seeking three categories of documents: (1) all drafts of a proposed 2024 MOU with PLEA; (2) all MOU proposals being negotiated or to be negotiated with PLEA under City Code § 2-218 and (3) "[a]ny communications to or from City officials regarding PLEA's failure to submit a draft MOU." On January 5, 2023, the City responded by providing Goldwater the January 3, 2023 letter it sent to PLEA, stating it had no other responsive documents. The City added that, for categories "1 and 2, any working drafts of MOUs and any proposals submitted during negotiations are not disclosable until filed with the City Clerk's office."

¶7	After further exchanges, on January 20, 2023, Goldwater submitted a renewed request for the same three categories of documents. On February 23, 2023, the City responded to the renewed request, stating it had no documents responsive to the category 1 request, adding that "[o]nce a draft MOU between the City of Phoenix and PLEA is finalized, it will be released to the public for review and comment pursuant to the requirements of the City Code." For the category 2 request, although noting it had no responsive documents, the City added that it would be

"withholding all such responsive documents during negotiations" of the 2024 MOU. The City stated those documents need not be provided because "[r]eleasing [those proposals] could create a chilling effect[,] . . . would hinder the negotiations process," and "would harm the best interest of the City." The City provided one other document responsive to the category 3 request.

¶8         Dissatisfied with that response, on March 1, 2023, Goldwater filed this statutory special action against the City in superior court. Goldwater's complaint sought an order compelling production of the requested documents as well as declaratory and injunctive relief. The complaint alleged that Arizona Public Records Law and the City Code required production of the requested documents. Goldwater then filed an application seeking an order requiring the City to show cause why Goldwater should not be granted the relief it was seeking. That application did not request an evidentiary hearing.

¶9         After full briefing and oral argument, in May 2023, the court denied Goldwater's request for special action and injunctive relief. Noting the City did not dispute the documents requested were public records presumptively "open to inspection by any person," Ariz. Rev. Stat. (A.R.S.) § 39-121 (2025),[1] the court found the City had shown the documents were protected from disclosure under the "best interests of the state" exception recognized in *Carlson v. Pima County*, 141 Ariz. 487, 491 (1984). Although the City had supported its position with declarations, "Goldwater did not submit any controverting declarations." Noting Goldwater's interest in disclosure, the court observed "the general concerns about transparency, advocacy, and accountability identified by Goldwater are different . . . from the particularized interest in preserving the ability to negotiate labor agreements free of political pressure, collusion, and unnecessary delay due to impasse" the City had shown. The court found the City's "declarations establish potential material harm (i.e., potential for undue pressure, impasse, and collusion) that outweighs the presumption in favor of disclosure."

¶10        Although finding the City properly withheld those documents, the court concluded the documents could not be withheld indefinitely. Balancing the parties' interests, the court ruled the documents could be withheld from disclosure only "until the next MOU is finalized."

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

*See generally Church of Scientology v. City of Phx. Police Dep't*, 122 Ariz. 338 (1979) (prohibiting permanent non-disclosure).

¶11        As these events were unfolding in court, on April 13, 2023, the proposed 2024 MOU was made available for public comment. Public comment was received on that proposal at an April 19, 2023 City Council meeting. Then, on May 3, 2023, the City Council approved the 2024 MOU. The 2024 MOU, a publicly available document, was operative from July 1, 2023 until it expired in June 2024.

¶12        At an August 2023 court hearing, Goldwater requested an evidentiary hearing. At a day-long evidentiary hearing in December 2023, the court received exhibits and stipulated facts and heard testimony from seven witnesses and arguments from the parties. The court's 14-page minute entry entered in January 2024 recited the stipulated facts, summarized the applicable law and applied it to the disputed facts. In addressing the conflicting evidence, the court found the testimony of the City's witnesses more persuasive and probative than Goldwater's, in part given their experience with City-affiliated MOUs. Again, noting Goldwater's interest in disclosure, the court observed that:

> the general concerns about transparency, advocacy, and accountability identified by the [Goldwater] are different, however, from the particularized interest in preserving the ability to negotiate labor agreements free of political pressure, collusion, and unnecessary delay due to impasse. The City provided testimony from individuals directly involved in the collective bargaining process and with experience in labor negotiations with and for the City of Phoenix. [Goldwater] asserts that the City's witnesses merely speculate about potential harm. Even if true, speculative concerns may be sufficient to support the public interests exception. *See Ariz. Bd. of Regents v. Phx. Newspapers, Inc.*, 167 Ariz. 254 (1991); *Scottsdale Unified Sch. Dist. No. 48 of Maricopa Cnty. v. KPNX Broad. Co.*, 191 Ariz. 297 (1988). Here, the Court finds the testimony presented by the City establishes potential material harm (i.e., potential for undue pressure, impasse, and collusion) that

outweighs the presumption in favor of disclosure.

Although declining the primary relief Goldwater requested, this January 2024 ruling stated the requested documents could be withheld from disclosure only "until the next MOU is finalized."[2]

**¶13** After entry of a final judgment, Goldwater timely appealed. This court has appellate jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21 and -2101(A)(1).[3]

## DISCUSSION

### I. Arizona's Public Records Law.

**¶14** The parties do not dispute the documents Goldwater requested are "public records." *See Griffis v. Pinal Cnty.*, 215 Ariz. 1, 4 ¶ 9 (2007) (providing "three alternative definitions of public records," a term not defined by statute). By statute, absent an applicable exception, "[p]ublic records and other matters . . . shall be open to inspection by any person." A.R.S. § 39-121. Arizona's public records statute "evince[s] a clear policy favoring disclosure." *Carlson*, 141 Ariz. at 490. Although there are "many statutory exceptions to this public right of inspection," *Scottsdale Unified Sch. Dist.*, 191 Ariz. at 300 ¶ 9 (citing authority), there is no argument that any statutory exception applies here. Case law, however, has recognized three additional exceptions to the statutory public record disclosure requirement, using "a balancing test to determine whether [1] privacy, [2] confidentiality, or [3] the best interests of the state outweigh the policy in

---

[2] This "next MOU" reference appears to be to an MOU that should have been finalized and in place effective July 2024 (the 2025 MOU). The record does not address a 2025 MOU, recognizing the complaint's focus is documents created leading up to the 2024 MOU. In addition, the record does not show whether the City made available on or after July 1, 2024, the documents leading up to the 2024 MOU, as the superior court's order appears to require.

[3] The court acknowledges and appreciates the amicus brief filed by Poder in Action and the American Civil Liberties Union Foundation of Arizona. To the extent the amici ask the court to address issues and arguments the parties did not raise, the court declines that request. *See Town of Chino Valley v. City of Prescott*, 131 Ariz. 78, 84 (1981) (amicus curiae may not create, extend or enlarge issues) (citing cases).

favor of disclosure." *Griffis*, 215 Ariz. at 5 ¶ 13 (citing *Carlson*, 141 Ariz. at 490). The question here is whether, in applying this *Carlson* balancing test, the "best interests of the state" exception justifies the City's refusal to provide the public records Goldwater requested.

**¶15**　　　The "best interests of the state" exception is the least litigated and least developed of the three common law exceptions to the requirement that public records be disclosed. *See, e.g.*, *Scottsdale Unified Sch. Dist.*, 191 Ariz. at 299 ¶ 1 (addressing "privacy" exception); *Ariz. Bd. of Regents*, 167 Ariz. at 258 (addressing "confidentiality" exception). As a result, there is comparatively little case law applying the "best interests of the state" exception to disclosure. The City, as the party seeking to prevent disclosure of public records, had the burden to prove that this exception overcomes "the legal presumption favoring disclosure." *Scottsdale Unified Sch. Dist.*, 191 Ariz. at 300 ¶ 9 (citation omitted).

## II.　　Applicable Standard of Review.

**¶16**　　　Goldwater argues a de novo standard of review applies, viewing the facts and resulting inferences in a light most favorable to Goldwater. The City argues findings of fact should be reviewed for an abuse of discretion, while the "legal conclusions drawn from those facts are reviewed de novo." Recognizing Goldwater challenges the January 2024 ruling entered after an evidentiary hearing, as directed by the Arizona Supreme Court, this court applies the following standard of review:

> The trial court appropriately conducted the balancing test pursuant to *Carlson*. In reviewing the trial court's findings of fact, we apply two different standards of review. We will uphold its findings of fact unless clearly erroneous. We are, however, free to draw our own conclusions of law from these facts. Thus, whether plaintiffs wrongfully denied defendants access to public records 'is an issue of law which we review de novo.'

*Id*. at 302 ¶ 20 (citations omitted).

**III.    Goldwater's Arguments on Appeal.**

**¶17**         Goldwater argues the superior court erred by (1) failing to require the City to show a probability of specific material harm (rather than potential material harm) will result if disclosure was required and (2) not acknowledging that the requested documents "are produced in a process funded by taxpayers and reveal critical information about the allocation of hundreds of millions of dollars in taxpayer money on significant policy questions affecting public safety." The court addresses these arguments in turn.

**A.    Goldwater Has Shown No Error in the Superior Court's Recitation and Application of the Law.**

**¶18**         The *Carlson* balancing test provides that:

> [t]o justify withholding public documents, the . . . interest in non-disclosure must 'outweigh the general policy of open access.'" It is the public official's burden to "demonstrate specifically how production of the records would violate rights of privacy or confidentiality or would be detrimental to the best interests of the state." A party seeking to block disclosure must, under *Carlson*, demonstrate "the probability that specific, material harm will result from disclosure."

*Smith v. Town of Marana*, 254 Ariz. 393, 397 ¶ 12 (App. 2022) (citations omitted); *accord Mitchell v. Superior Ct.*, 142 Ariz. 332, 335 (1984). By definition, the *Carlson* balancing test is applied in a case-by-case manner, *Bolm v. Custodian of Recs.*, 193 Ariz. 35, 40 ¶13 (App. 1998) (citing cases), with substantial deference owed to the superior court's factual findings, *see Scottsdale Unified Sch. Dist.*, 191 Ariz. at 302 ¶ 20. As noted by the superior court, given its very nature, even concerns about events that have not yet occurred may be sufficient to support the "best interests of the state" exception to disclosure. *See Ariz. Bd. of Regents*, 167 Ariz. at 258 (reversing decision requiring disclosure of names of all prospects for university president position, noting such disclosure "could chill the attraction of the best possible candidates for the position.").

**¶19**        Goldwater asserts reversible error based on the proposition that the superior court "based its decision on the mere 'potential,' for generalized, abstract harms – as opposed to the 'probability [of] specific, material harm' required" for the best interests exception to apply. On the record presented, Goldwater has shown no error.

**¶20**        In context, the text Goldwater relies on comes from *Mitchell*, which arose out of a request for a criminal defendant's presentence report, is highlighted in a longer passage from that case:

> [W]hen a newspaper seeks information as a member of the public, and a convicted offender wishes to bar disclosure on the ground of infringement of his privacy, the rights involved are not coequal, and any decision about which claim is to prevail must ordinarily favor the public's right of access. *The burden of showing the probability that specific, material harm will result from disclosure,* thus justifying an exception to the usual rule of full disclosure, is on the party that seeks non-disclosure rather than on the party that seeks access.
>
> By sealing all presentence reports, the 1973 Pima County rule places the burden on the wrong party, producing a result that is directly contrary to our rules.

142 Ariz. at 335 (emphasis added). In setting forth the applicable legal standard, correctly quoting *Mitchell*, the superior court here stated "[t]he probability of 'specific, material harm' must be shown." In describing what the City's witnesses established, after weighing conflicting evidence and assessing credibility, the superior court concluded that politicization of the negotiating process "has the potential to effect the City's interests, including the taxpayers' interests." Goldwater has not shown how that recitation of the legal standard or characterization of the evidence was reversible error or how that summary was clearly erroneous, given the evidence considered by the court. *See Scottsdale Unified Sch. Dist.*, 191 Ariz. at 302 ¶ 20 (citing cases).

**¶21**        In analyzing the evidence received, the superior court also found the testimony of the City's witnesses "supports a conclusion that the City has a strong interest in maintaining the confidentiality of the records

at issue;" the public comment process for an MOU recommended for approval "allows an opportunity for transparency, advocacy, and accountability" and Goldwater provided generalized concerns that were different "from the particularized interest in preserving the ability to negotiate labor agreements free of political pressure, collusion, and unnecessary delay due to impasse." Again, Goldwater has not shown how these characterizations were reversible error or were clearly erroneous based on the evidence presented. *See id.* (citing cases).

**¶22** At the December 2023 evidentiary hearing, reciting *Mitchell*, the superior court referenced "potential harm or probability, I guess, of harm, if the documents were to be released." In its January 2024 ruling, after stating "[t]he probability of 'specific, material harm' must be shown," the superior court concluded that "the testimony presented by the City establishes potential material harm (i.e., potential for undue pressure, impasse, and collusion) that outweighs the presumption in favor of disclosure." Goldwater argues this use of "potential," rather than "probability," is reversible error. But in addressing material harm, the superior court referenced both a "probability," which Goldwater argues was required, and "potential," which Goldwater argues was error. Even though using both words to describe the standard, the record supports the presumption that the superior court knew the applicable law and applied it here. *See State v. Lee*, 189 Ariz. 608, 616 (1997) ("Trial judges 'are presumed to know the law and to apply it in making their decisions.'") (citation omitted).

**¶23** Finally, Goldwater cites no case law or other applicable public records authority showing a finding of potential material harm rather than probable material harm constitutes reversible error. Nor does Goldwater cite any case finding the *Mitchell* statement on which it relies was a definitive, universal standard applicable to all facts in what the Arizona Supreme Court has described as a case-by-case inquiry. *See Bolm*, 193 Ariz. at 40 ¶13 (declining an invitation "to fashion a blanket rule protecting" disclosure of certain types of documents "because the [*Carlson*] balancing test must be applied on a case-by-case basis 'to determine whether a particular record should be released.'") (citation omitted). Moreover, appellate case law reflects a standard that, at least textually, differs from what Goldwater argues *Mitchell* mandates. *See ACLU v. Ariz. Dep't of Child Safety*, 240 Ariz. 142, 151 ¶ 29 (App. 2016) (describing the standard as requiring a governmental entity opposing disclosure to "demonstrate specific material harm or risks to privacy, confidentiality, or the best interests of the state") (citing cases). On this record, Goldwater has shown no error in the superior court's recitation and application of the law.

**B.** **Goldwater's Argument that the Documents Are the Product of a Process Funded by Taxpayers and Contain Information About Allocating Significant Tax Dollars Involving Policy Questions Does Not Show Error.**

¶24 Arguing the superior erred in failing to order disclosure of the documents it requested, Goldwater asserts the documents "are produced in a process funded by taxpayers and reveal critical information about the allocation of hundreds of millions of dollars in taxpayer money on significant policy questions affecting public safety." But public records typically would be produced in a process funded by taxpayers and may reveal information about funding originating from tax revenues and implicating public policy. *See Griffis*, 215 Ariz. at 4 ¶ 9 (describing alternative definitions for public records). That Goldwater requested public records is a predicate for the *Carlson* balancing test to apply, not a basis to conclude the superior court erred in applying it. *See id.* at 5 ¶ 13 (noting *Carlson* balancing test applies only after the court determines "whether a document is a public record"). Moreover, to the extent Goldwater seeks to reweigh on appeal the evidence considered and weighed by the superior court, this court declines that invitation. *See, e.g.*, *Hurd v. Hurd*, 223 Ariz. 48, 52 ¶ 16 (App. 2009); *In re Estate of Pouser*, 193 Ariz. 574, 579 ¶ 13 (1999). Goldwater's argument that the documents it seeks stem from a taxpayer-funded process allocating significant tax dollars based on policy determinations does not show error by the superior court.

**C.** **Remand Is Required for an In Camera Review of Redacted Documents Responsive to Category 2 of the Request.**

¶25 The record presented provides two primary reasons for why further proceedings are required for the order preventing the disclosure of documents responsive to category 2 of the request.

¶26 *First,* the record suggests much of each MOU is boilerplate that does not change in the meet and confer process. Goldwater filed the draft and final MOU for the period ending June 30, 2023 (the 2023 MOU). Apparently building off a 2019-2021 MOU, the 62-page draft 2023 MOU shows changes of any sort on about 20 pages, with half of those pages the result of removing one section. That comparison shows the vast majority of the MOU remained unchanged for years.

¶27 For the 2024 MOU, the changes apparently were far more modest. In closing arguments at the December 2023 evidentiary hearing, the City asserted the 2024 MOU was 45-pages long and "there's maybe ten lines of text that are changed throughout . . . . They're very minimal

changes." Although offering that argument for a different purpose, it is a concession that the changes reflected in the 2024 MOU, compared to the prior MOU, are "minimal" and small in number.

**¶28** Unchanged provisions of MOUs, in draft or final form, based on prior MOUs that are publicly available public records, would not appear to be protected from disclosure. Indeed, the City does not appear to suggest disclosure of boilerplate portions of the MOU that remain unchanged, either during negotiations or in a proposed final MOU, "would be detrimental to the best interests of the state." *Smith*, 54 Ariz. at 397 ¶ 12 (citation omitted).

**¶29** *Second,* the record provided does not include the documents responsive to Goldwater's category 2 request. Indeed, it appears those documents were never provided to or reviewed by the superior court.

**¶30** For nearly 75 years, the Arizona Supreme Court has highlighted the need for in camera court review in undertaking the *Carlson* balancing test, particularly in cases where the best interests of the state is claimed as an exception to public disclosure. In *Mathews v. Pyle*, for example, in addressing whether documents in the Governor's Office were protected from disclosure, the Arizona Supreme Court reversed a dismissal and directed the documents "be produced in court for the private examination of the trial judge in order that the court may determine whether . . . [the] documents are confidential and privileged or whether their disclosure would be detrimental to the best interests of the state." 75 Ariz. 76, 81 (1952). To avoid any doubt about the need for such court review, *Mathews* added "***In no other way can such questions be determined***." *Id.* (emphasis added). In *Carlson*, the Arizona Supreme Court repeated that in camera review and partial redaction are "practical alternative[s] to the complete denial of access." 141 Ariz. at 490–91 (citing cases); *accord Mitchell*, 142 Ariz. at 334 ("where the court's discretion has been properly invoked, [we] have asked trial courts to make in camera inspections of the relevant documents and balance the rights of the parties.").

**¶31** Goldwater correctly notes the City did not seek in camera review and did not provide the court unredacted and redacted copies of the documents it claims are shielded from disclosure. As a result, Goldwater argues, "the City has waived both alternatives to full disclosure." Recognizing waiver typically is discretionary, the importance of in camera review has prompted the Arizona Supreme Court to require such review even over the objection of the party claiming asserted public records should not be disclosed.

**¶32**     In *Griffis*, the party arguing that records should not be disclosed given an expectation of privacy "declined" the superior court's offer to conduct an in camera inspection of those documents. 215 Ariz. at 3 ¶ 4. Even then, the Arizona Supreme Court did not find waiver. Instead, noting no court had reviewed the disputed documents, *Griffis* declared "[a]bsent such a review, we have no record on which we can determine the nature and content of the requested documents." *Id.* at 6 ¶ 17. And even though the party opposing production had declined the in camera review offer, *Griffis* remanded "to permit the superior court to review the content of the disputed [documents] in camera." *Id.*;[4] *accord Schoeneweis v. Hamner*, 223 Ariz. 169, 175 ¶ 22 (App. 2009) ("Although no Arizona decision imposes a per se rule requiring an in camera inspection of public records (and we do not announce one here), the necessity of such a review becomes nearly inescapable when the court contemplates the release of documents that inherently raise significant privacy concerns.").

**¶33**     In reaching this conclusion, the court writes narrowly. Most cases involving common law exceptions to producing public records do not turn on whether that production would be against the best interests of the state. The best interests of the state exception to the public records law and the applicable legal standards differ, qualitatively, from the common law privacy and confidentiality exceptions. Among other things, the best interests of the state exception is more amorphous and implicates broader interests than privacy and confidentiality concerns, which typically are personal. *See Phx. Newspapers, Inc. v. Keegan*, 201 Ariz. 344, 348-49 ¶ 18 (App. 2001) ("Th[e] 'best interests of the state' standard is not confined to the narrow interest of either the official who holds the records or the agency he or she serves. It includes the overall interests of the government and the people."). As a result, the legal standards for these three common law exceptions to disclosure of public records address different interests and involve different kinds of balancing in applying the *Carlson* balancing test.

---

[4] Although the *Griffis* remand was "to determine whether [the documents] are subject to the public records law," *id.* at 6 ¶ 17, the same concept applies to a claim that public records are not subject to disclosure.

¶34 The result on remand in this case may yield an outcome that significantly varies from the order challenged in this appeal, given review of the documents by the superior court, the passage of time or other factors. For now, however, as directed by Arizona Supreme Court cases, remand is necessary for the City to provide to the superior court, for in camera review, both the unredacted public records and versions of those documents with redactions reflecting what the City claims should not be disclosed based on the best interests of the state exception.

## ATTORNEYS' FEES ON APPEAL

¶35 Goldwater requests an award of attorneys' fees on appeal pursuant to A.R.S. §§ 12-341, 12-348, 12-2030, and 39-121.02; the Arizona Rules of Procedure for Special Actions and the private attorney general doctrine. Given the remand, Goldwater's request is denied without prejudice so that, on remand, the superior court may consider whether Goldwater is eligible for an award of fees on any of these grounds and, if so, what reasonable fees should be awarded.

## CONCLUSION

¶36 The order prohibiting disclosure is remanded for further proceedings consistent with this opinion.

